**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ICEBOX-SCOOPS, INC.,

                        Plaintiff,

       -against-

FINANZ ST. HONORE, B.V. and
DANA CLASSIC FRAGRANCES, INC.,

                      Defendants.
------------------------------------------------------------x

07 cv 0544 (NG)(SMG)

**MEMORANDUM OF LAW IN SUPPORT
OF THE RULE 12(c) MOTION FOR JUDGMENT
ON THE PLEADINGS FILED BY DEFENDANT
<u>DANA CLASSIC FRAGRANCES, INC.</u>**

LAWRENCE B. GOLDBERG, ESQ.
LAWRENCE B. GOLDBERG, P.C.
Attorney for Dana Classic Fragrances, Inc.
220 Fifth Avenue
Thirteenth Floor
New York, NY 10001
(212) 252-8300

1

# TABLE OF CONTENTS

Table of Authorities -ii-

Preliminary Statement -2-

Statement of the "Facts" -3-

Legal Arguments on the Motion -6-

Point I

    The presentation of Internet documents
Constitutes admissible evidence for this motion. -6-

Point II

    Plaintiff, Icebox-Scoops, cannot initiate or
Maintain this action against Dana Classic
Fragrances, Inc. -8-

        There is no right of recovery for a
Fictitious corporation. -11-

Point III

    Plaintiff can have no recovery against Dana
Based on the Licensing Agreement. -12-

        Pennsylvania case law severely
Restricts actions against non-signatories. -14-

Conclusion

    The Complaint and Action must be dismissed. -15-

## TABLE OF AUTHORITIES

Ambrose v. Train Collectors Ass'n., 2008 US Dist. LEXIS
    39509, Copy. L. Rep. (CCH) P29555
    (W.D., Pa., 2008) — -9-

Botwinick v. Credit Exchange, Inc., 419 Pa. 65,
    213 A.2d 349 (Pa., 1965) — -14-

Culbreth v. Amosa, Ltd., 898 F.2d 13 (3rd Cir., 1990) — -14-

Drug Fair-Community Drug Co. v. Drug Fair, Inc.
    453 Pa. 454, 309 A.2ds 363 (Sup.Ct., 1973) — -12-

EEOC v. E.I. DuPont De Nemours and Co., 2004 US Dist.
    LEXIS 20748 (ED, La., 2004), affirmed, 480 F.3d 724
    (5th Cir., 2007) — -7-

Hutchinson v. Sunbeam Coal Corp., 513 Pa. 192, 519
    A.2d 385 (Pa., 1986) — -9-

Jiffy Lube Int'l v. Jiffy Lube, 848 F.Supp. 569
    (ED, Pa., 1994) — -14-

Lester v. Natsios, 290 F.Supp.2d 11 (D.D.C., 2003) — -7-

Philadelphia School of Beauty Culture v. Haas,
    1949 Pa. St. & Cnty. Dec. LEXIS 4, 78 Pa. D&C
    97 (Common Pleas Ct., 1949) — -11-

Purcell v. Universal Bank, N.A., 2003 US Dist. LEXIS
    7061 (ED, Pa., 2003) — -15-

1726 Cherry St. Partnership v. Bell Atlantic Properties,
    439 Pa. Super. 141, 653 A.2d 663 (Pa. Super. Ct., 1995) — -10-

Simon v. UmumProvident Corp., 2002 US Dist. LEXIS 9331
    (ED, Pa., 2002) — -14-

W.F. Meryers Co. v. Stoddard, 363 Pa. Super. 481,
    526 A.2d 446 (Pa. Super. Ct., 1987) — -12-

56 Pa. C.S. §§ 302, 303, 331 — -11,12-

## **PRELIMINARY STATEMENT.**

Defendant DANA CLASSIC FRAGRANCES, INC. ("Dana") brings this instant motion pursuant to Federal Rule of Civil Procedure, Rule 12(c) for a judgment of dismissal of the action (as against Dana) based on the pleadings.

Plaintiff ICEBOX-SCOOPS, INC. ("Icebox-Scoops") filed this action to recover for damages allegedly incurred as a result of a breach of a "License Agreement" dated (as of) March 1, 2005 by and between the following entities: defendant FINANZ ST. HONORE, B.V. ("Finanz") as the license holder and "ICE BOX, INC. ("Ice Box") as the licensee. That License Agreement is incorporated into the Icebox-Scoops complaint as Exhibit "A". There are seven (7) claims in the Complaint (Docket No. 1) : First (contract breach of the Licensing Agreement); Second (breach of an express warranty contained in the Licensing Agreement); Third (fraud in the inducement and fraud in the factum regarding to the Licensing Agreement); Fourth (negligent misrepresentation regarding the Licensing Agreement); Fifth (unjust enrichment); Sixth (equitable estoppel based on the Licensing Agreement); and Seventh (promissory estoppel based on the Licensing Agreement). Nowhere in the License Agreement is the name of the plaintiff, Icebox-Scoops, mentioned.

There is only one plaintiff in this action: Icebox-Scoops. In its Rule 7.1 Statement (Exhibit A to this Memorandum of Law and Docket No. 2), Icebox-Scoops (by its attorneys) "certifies that the following are corporate parents, affiliates and/or subsidiaries of said party, which are publicly held : NONE."

There are only two defendants in this litigation : Finanz and Dana.

The License Agreement itself provides that any action commenced thereon shall be brought in the US District Court of New York and that any interpretation of the License Agreement and the applicable law applied thereto shall be that of the Commonwealth of Pennsylvania.

After plaintiff Icebox-Scoops commenced this action, issue was joined by the two defendants who served and filed their answers to the complaint.

In its answer, Dana alleged that it was not a party to the Licensing Agreement (first defense) and that Icebox-Scoops is not a party to the Licensing Agreement as well

2

(second defense) and that Icebox-Scoops never had a valid assignment from Ice Box either.

Dana (and Finanz) has secured the permission of the Court to file the instant motion for judgment on the pleadings.

## STATEMENT OF THE "FACTS".

At the center of this litigation is the licensing rights to the sales of a fragrance marketed under the trademarked name of TINKERBELL® (for a "Class 3" use – children's cosmetics, fragrances and the such). Finanz owns (since June 29, 1999) the mark for TINKERBELL®. Finanz acquired the TINKERBELL® mark from an unrelated third party corporation. Dana has no rights in or to the TINKERBELL® mark. Finanz and Dana are "related" corporations; they both have their stock held (either directly, in the case of Dana, or through intermediary corporations) by IMG Holding, Inc. That ownership connection is made clear in the affidavit of Jeffrey B. McGovern (an attorney employed by Dana) which is made part of the Dana motion papers (and which is specifically incorporated by reference herein).

In the Licensing Agreement, Finanz licensed the use of the TINKERBELL® mark to Ice Box. In the License Agreement, the following facts and representations were made by the two signatories to the Licensing Agreement : Finanz and Ice Box.

1. Ice Box is a New York corporation (language on page 1);
2. The authority for Ice Box to enter into the Licensing Agreement has been authorized by Ice Box's board of directors (paragraph 16);
3. No assignment by Ice Box of the Licensing Agreement is permitted without the prior written consent of Finanz (paragraph 14);
4. Finanz may terminate the Licensing Agreement in the event of a breach (paragraph 7);
5. The Licensing Agreement shall be governed by the laws of Pennsylvania (paragraph 16.2);

3

      6.   The language in and the representations contained in the Licensing Agreement constituted all of the agreement between Finanz and Ice Box (Gindi) and any previous representations were specifically merged into and subsumed by the language in the Licensing Agreement; and

      7.   The Licensing Agreement was signed for Ice Box by ISSAC GINDI ("Gindi") identified as the president of Ice Box.

Dana is mentioned in the Licensing Agreement, not as a party to the Licensing Agreement, but for limited purposes as designated by Finanz. Dana's roles *vis a vis* the Licensing Agreement is limited to the following:

      1.   Dana was designated to receive any monies resulting from sales by Ice Box of products with the TINKERBELL® mark (paragraph 8.6);

      2.   Dana was designated to receive any monies resulting from distribution of products with the TINKERBELL® mark (paragraph 8.4); and

      3.   Dana was to be provided with notices delivered under the Licensing Agreement (paragraph 16.7).

These are the only three (3) times Dana is mentioned in the Licensing Agreement. Again, Dana is not a named party to the Licensing Agreement and the Licensing Agreement is not signed by Dana.

After the Licensing Agreement was signed, apparently (from the exchange of correspondence between Finanz and Gindi), there arose disputes over whether Gindi was performing the terms of the Licensing Agreement. In those items of correspondence, Gindi is identified as the president of Ice Box.

At no time does the name Icebox-Scoops ever appear.

Gindi held himself out to be the president of Ice Box as the entity in the Licensing Agreement. In a deposition Gindi gave in another lawsuit (that did not relate to the Licensing Agreement), Gindi testified that he was the president of Ice Box (McGovern Affidavit, paragraph "11"). Gindi never disclosed that the true name of his business was Icebox-Scoops (and not Ice Box), a New York corporation.

In late 2005, Finanz declared a default under the terms of the Licensing Agreement and Finanz declared the Licensing Agreement to be null and void *vis a vis* Ice Box (and Gindi). While Gindi disputed the terms of the default, Finanz never conceded that the declaration was not valid. The Licensing Agreement was therefore terminated.

The only "connection" (other than in the convoluted ownership relationship) between Dana and Finanz is that for a limited period of time in 2005, Finanz's USA offices were located in Mountaintop, PA, in the same offices where Dana had its offices. The connection was because Alfred Cowger (an attorney and Finanz' General Manager) had been the Dana manager before he was made Finanz' General Manager and Cowger had his home and office in Mountaintop, PA (where previous owners of the TINKERBELL® mark had manufactured and/or packaged fragrance products) (McGovern affidavit, Paragraph "18").

Dana's "role" under the Licensing Agreement only could come into play if Ice Box obtained approvals for marketing the TINKERBELL® mark from Finanz and only after Ice Box actually made sales of Class 3 products bearing the TINKERBELL® mark (McGovern affidavit, Paragraph "18"). There were no approvals and there were no sales; hence, there was nothing for Dana to do and Dana did nothing.

When this instant action was filed by Icebox-Scoops, Dana (and Finanz) were surprised that the corporate plaintiff was not Ice Box, the name on the Licensing Agreement and the name provided by Gindi.

A search of the public records of the offices of the New York State Department of State (Division of Corporations) and of the Commonwealth of Pennsylvania Department of State produced these factual results:

1.  Ice Box is not a New York corporation;
2.  Icebox-Scoops was incorporated in New York on September 11, 2000;
3.  Icebox-Scoops has never filed under the fictitious corporate name of "Ice Box, Inc." or "Ice Box" in Pennsylvania, despite the provisions for such a filing under the Pennsylvania Fictitious Corporate Name statute (quoted in full in McGovern's affidavit, Paragraph "28").

5

A search of the Delaware Corporate records revealed that there is a corporation known as "Ice Box, Inc.", which was incorporated in Delaware in 1999 and which also filed to do business in California in 2000. That corporation is involved in "original animated entertainment programming", a significant fact because the TINKERBELL® mark is an animated figure drawn from the Peter Pan story character.

The name "Scoops" itself appears to bear a relationship with or reference to a New York City apparel company that sells fragrances at retail with stores in New York and other large cities in the US (such as Chicago and Dallas) (McGovern affidavit, Paragraph "24").

In the end, it is clear that Gindi purposefully misled Finanz by claiming that his corporation was named Ice Box when it was not. Gindi has misled this Court by trying to gloss over this misrepresentation in filing this action in the name of Icebox-Scoops when he (and Icebox-Scoops) never took any assignment of the rights of Ice Box under the Licensing Agreement. Gindi has tried to play by his own rules when, despite the fact that his company (whether it is Ice Box or Icebox-Scoops) never filed under the Pennsylvania Fictitious Corporate Name statute. And, Gindi has attempted to rope-in any available potential "deep pocket" defendant by including Dana as a defendant to this action when Dana was not a party to the Licensing Agreement and was never involved in the negotiations involved in the making of the Licensing Agreement or anything else concerning the TINKERBELL® mark that the Licensing Agreement purported to license to Ice Box.

## LEGAL ARGUMENTS ON THE MOTION.

### Point I

### The presentation of internet documents Constitutes admissible evidence for this motion.

Plaintiff claims that there is no difference between Icebox-Scoops (its true corporate name) and Ice Box (the corporate name appearing in the Licensing

6

Agreement as the sole licensee of the TINKERBELL® mark for the sale of Class 3 goods. The various records from the official governmental internet sites shows that this claim is false.

Icebox-Scoops is not Ice Box. Icebox-Scoops is a separate corporate entity incorporated in New York. There is no Ice Box incorporated in New York. There are other Ice Box corporations incorporated in other states, and one is engaged in animated images as a business. This is similar to the TINKERBELL® mark where it is related to or suggests the literary character in the Peter Pan novel. But none of those are related to plaintiff. Plaintiff's selection of "Scoops" in its corporate name is itself a clear attempt to draw upon another corporation that is engaged in retail sales of clothes and fragrances in large U.S. cities (including New York City).

These "facts" (admissible on a Rule 12(c) motion) are and constitute admissible evidence. Records from state agencies (the various departments of state) are "public records" under the clear language of Federal Rule of Evidence, Rule 803(8) (data compilations in any form). US Census Bureau data is a "public record". See, <u>EEOC v. E.I. DuPont De Nemours and Co.</u>, 2004 U.S. Dist. LEXIS 20748 (E.D., La., 2004), affirmed, 480 F.3d. 724 (5th Cir., 2007). E-mail records are also public records. See, <u>Lester v. Natsios</u>, 290 F.Supp.2d 11 (D.D.C., 2003).The internet facts (available from the public agency web pages) is "data" that is a public record.

### Point II

### Plaintiff, Icebox-Scoops, cannot Initiate or maintain this action Against Dana Classic Fragrances, Inc.

Icebox-Scoops (the only named plaintiff in this action) is not a signatory to the Licensing Agreement. Icebox-Scoops never received any assignment of any kind (whether or not it was valid under the terms of the Licensing Agreement since Finanz never consented in writing to any assignment whatsoever) of the rights of Ice Box under the Licensing Agreement to or relating to in any way the Class 3 use of the TINKERBELL® mark. The only "connection" between Icebox-Scoops (the plaintiff) and

Ice Box (the licensee under the Licensing Agreement) is that Issac Gindi is the president of both (or he misrepresented that he was the president of both separate corporate entities).

Dana is not a party to the Licensing Agreement. Dana never signed the Licensing Agreement in any way, shape, fashion or form. The only reference to Dana in the Licensing Agreement is that it was to receive notice in addition to the parties to the Licensing Agreement (Ice Box and Finanz) and that Dana was to be involved in accounting functions once Class 3 goods bearing the TINKERBELL® mark were being marketed and sold by Ice Box (which never happened).

Icebox-Scoops has no basis, whatsoever, to sue Dana under or in relation to the Licensing Agreement that Icebox-Scoops has attached to and incorporated into its Complaint in this action.

The applicable law to determine if Icebox-Scoops can sue and can sue Dana is that of Pennsylvania. If Icebox-Scoops is attempting to sue under the Licensing Agreement (which it is), the Licensing Agreement stipulates and provides that only Pennsylvania law is to be used in interpreting the Agreement and its provisions. Were it not for the Licensing Agreement, Icebox-Scoops would have absolutely no claim against anyone for its claimed or alleged damages for or in connection with the marketing or sale of the Class 3 goods with the TINKERBELL® mark. Finanz did not convey any licensing rights to anyone (either Icebox-Scoops, the instant plaintiff, or Ice Box, the licensee in the Licensing Agreement) except for any provision in the Licensing Agreement.

Thus, Icebox-Scoops, the plaintiff, is forever bound by the terms and conditions of the Licensing Agreement. If the plaintiff claims rights under the Licensing Agreement (which it does), then it is bound by all of the terms and conditions of that Licensing Agreement. In <u>Hutchison v. Sunbeam Coal Corp.,</u> 513 Pa. 192, 519 A.2d 385, 388 (Pa. 1986), the Court said : " The law will not imply a different contract than that which the parties have expressly adopted. To imply covenants on matters specifically addressed in the contract itself would violate this doctrine." Thus, no matter what the consequences, the provision in the Licensing Agreement that Pennsylvania law be applied is binding on this plaintiff and on this Court.

The Licensing Agreement also contains an "integration clause" merging and incorporating all prior statements (written or oral) into and subsumed by the terms and conditions of the Licensing Agreement. The applicable Pennsylvania law is found in <u>Ambrose v. Train Collectors Ass'n</u>, 2008 U.S. Dist. LEXIS 39509 (*13), Copy. L. Rep. (CCH) P29555 (W.D. Pa. 2008), where the Court stated:

> "Because an integration clause is designed to illustrate that the parties' negotiations, conversations and agreements made prior to the execution are incorporated in the agreement, <u>HCB Contractors v. Liberty Place Hotel Assoc.</u>, 539 Pa. 395, 652 A.2d 1278, 1280 (Pa., 1995), the Court will decline plaintiff's invitation to vary the terms of the Settlement Agreement with extraneous matter."

In addition, under Pennsylvania law, parol evidence is only admissible in very limited circumstances to vary the terms of the written contract with an integration clause. In <u>1726 Cherry St. Partnership v. Bell Atlantic Properties</u>, 439 Pa. Super. 141, 653 A.2d 663 (666) (Pa. Super. Ct. 1995), the Court stated :

> "Parol evidence of representations concerning a subject dealt with in an integrated written agreement and made prior to or contemporaneous with the execution of the agreement [should be admitted] to modify or avoid the terms of that agreement only where it is alleged that the parties agreed that those representations would be included in the written agreement but were omitted by fraud, accident or mistake."

There was no agreement (or is one alleged in the complaint) that the parties (Finanz and Ice Box) ever agreed that something was omitted in the Licensing Agreement due to fraud, accident or mistake. The only "mistake" put forth by plaintiff's attorney (in pre-motion correspondence with the Court) is a "scribner's error" in using the fictitious corporate name of Ice Box instead of the true corporate name of Icebox-Scoops in the Licensing Agreement. Not only would it involve the use of parol evidence twice over (where Finanz does not concede that any such error was committed), it would require that Gindi negate the representations he made in the Licensing Agreement (that he was the president of Ice Box – which he never was – and the like. This "exception" is clearly not what the exception language in the case law is intended to cover. Thus, parol evidence is not admissible to modify or vary the terms of the Licensing Agreement. This

10

plaintiff (claiming under the Licensing Agreement) is bound by all of the terms and conditions of the Licensing Agreement.

### There is no right of recovery for a fictitious corporation.

Under Pennsylvania law, there is no right for a fictitious corporate entity to sue for recovery under an agreement. This is specifically at variance with the common law of other states, which tend to urge ignorance of the fiction of the fictitious corporate entity. Not so in Pennsylvania.

In 1949, the law in Pennsylvania provided that without a "statutory prohibition", a corporation can assume a fictitious name for "business purposes" and then sue or be sued in either its true corporate name or in the fictitious or assumed name. See, for example, <u>Philadelphia School of Beauty Culture v. Haas</u>, 1949 Pa. Slst. & Cnty. Dec. LEXIS 4, 78 Pa. D&C 97 (101) (Common Pleas Ct., 1949).

Subsequently, Pennsylvania enacted such a statutory prohibition. The relevant provisions of the Pennsylvania Fictitious Corporation Name Act (54 Pa.C.S. §301 *et seq*) are as follows:

> *§302 Definitions*
>
> FICTITIOUS NAME. Any individual or corporation, association, partnership, joint-stock company, business trust, syndicate, joint adventureship or other combination or group of persons, regardless of whether it is organized or formed under the laws of this Commonwealth or any other jurisdiction.
>
> *§303 Scope of Chapter*
>
> (a) VOLUNTARY REGISTRATION. Any one or more entities may elect to register a fictitious name under this chapter for the purpose of establishing a public record of their relationship to any business or other activity carried on under or through such fictitious name.
>
> (b) MANDATORY REGISTRATION.
> (1) Except as provided in paragraph (2), any entity which either alone or in combination with any other entity conducts any business in this Commonwealth under or through any fictitious name shall register the fictitious name under this chapter and shall amend such registration

11

whenever necessary to maintain the accuracy of the information disclosed thereby.
(2) Paragraph (1) shall not apply to any:
(i) Nonprofit or professional activities.
(ii) Activities which are expressly or impliedly prohibited by law from being carried out on under a fictitious name.

§331. *Contracts entered into or by entity using unregistered fictitious name.*

(a) GENERAL RULE. No entity which has failed to register a fictitious name as required by this chapter shall be permitted to maintain any action in any tribunal of this Commonwealth unless such entity shall have complied with the provisions of this chapter.

In the instant situation and circumstances, this plaintiff (Icebox-Scoops) conducting business as Ice Box (the name in the Licensing Agreement and the name under which it also conducted it business) had to have filed a registration under the Pennsylvania Statute. Finanz conducted its business in Mountaintop, Pennsylvania. Plaintiff could only use the TINKERBELL® mark for Class 3 goods under the Licensing Agreement and only "in combination" with Finanz in Pennsylvania. Before plaintiff could market any product with the TINKERBELL® mark, it had to have Finanz' approval and that approval (according to the Licensing Agreement) had to come via Al Cowger (Finanz' general manager) who was in Pennsylvania. Without a registration, this plaintiff could not commence any action (in Pennsylvania). That restriction was clearly meant by the signatories to the Licensing Agreement to apply here in the action filed in federal court in New York. Otherwise, why have a contract provision to apply only Pennsylvania law?

Only registered plaintiffs under the Fictitious Corporate Name Act have been allowed to sue or be sued in Pennsylvania. See, for example, Drug Fair – Community Drug Co. v. Drug Fair, Inc., 453 Pa. 454 (456-7), 309 A.2d 363 (Sup. Ct., 1973) (allowing a registered fictitious name corporation to be sued in Pennsylvania). No lawsuit can be commenced or maintained by a non-registering fictitious corporation until the statutory registration is completed. W.F. Meyers Co. v. Stoddard, 363 Pa. Super. 481 (485-486), 526 A.2d 446 (Pa. Super. Ct., 1987).

This action must be dismissed for plaintiff's abject failure to file (register) under the Pennsylvania Fictitious Corporate Name Act.

## Point III

### Plaintiff can have no recovery against Dana based on the Licensing Agreement.

One of the claims made against Dana by Icebox-Scoops is for contract breach based on the Licensing Agreement. There are seven (7) claims in the Complaint (Docket No. 1) : First (contract breach of the Licensing Agreement); Second (breach of an express warranty contained in the Licensing Agreement); Third (fraud in the inducement and fraud in the factum regarding to the Licensing Agreement); Fourth (negligent misrepresentation regarding the Licensing Agreement); Fifth (unjust enrichment); Sixth (equitable estoppel based on the Licensing Agreement); and Seventh (promissory estoppel based on the Licensing Agreement). As a matter of law, plaintiff cannot have recovery against Dana (a non-signatory to the Licensing Agreement) on the First, Second, Third, Fourth, Sixth and Seventh Claims in the Complaint – all of these claims are based on the terms and conditions of the Licensing Agreement.

To begin with, as is discussed *infra* at Point II, the Licensing Agreement contains an integration provision that merges all prior representations, statements and understandings into the written Licensing Agreement. By law, in the circumstances of this action, the Court cannot ignore the integration clause and cannot vary the terms and conditions of the Licensing Agreement to which the two parties (Ice Box and Finanz) signed.

In addition, as a matter of Pennsylvania law, there is no recovery based on a contract to which Dana is not a signatory.

## Pennsylvania case law severely restricts actions against non-signatories.

"Under Pennsylvania law, a corporation is generally regarded as a 'separate and independent entity' [.] Commonwealth v. Vienna Health Prods., Inc., 726 A.2d 432, 434 (Pa. Commw. Ct., 1999)." Simon v. UnumProvident Corp., 2002 U.S. Dist. LEXIS 9331 (*8) (ED, Pa., 2002). The Simon court then stated (citing a long list of Pennsylvania cases), "[a]ccordingly, a parent corporation is not generally liable for the contractual obligations of a subsidiary, even if the parent wholly owns the subsidiary" (LEXIS *8). The same court concluded that under Pennsylvania law, any exception to this rule is limited to a situation where one corporation is the alter ego of the other, as specifically defined (under Pennsylvania law) as one that requires "domination and control" that "renders the subsidiary a mere instrumentality of the parent" (quoting from Botwinick v. Credit Exchange, Inc., 419 Pa. 65, 213 A.2d 349 (353-354) (Pa., 1965) (LEXIS at *8 - *9). This is a "very high [factual] showing" (quoting from Jiffy Lube Int'l v. Jiffy Lube, 848 F.Supp. 569 (580) (ED, Pa., 1994). To sum up, the Simon court reached this "rule" in Pennsylvania concerning when (if ever) one related corporation that is a non-signatory to a contract ever be sued in its own name:

> "To warrant piercing the veil on an alter-ego theory, a plaintiff must demonstrate that the parent company exercised 'complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own". (LEXIS *9 - *10).

The test, in simple language, is whether the non-signatory corporation was only a "mere sham". Culbreth v. Amosa Ltd., 898 F.2d 13 (14) (3rd Cir., 1990). There is not one allegation in the Complaint that Dana was a mere sham and is nothing more than Finanz. There is not one allegation in the Complaint that Finanz so dominated Dana that Dana had "no separate mine, will or existence of its own". Based on the language of the Complaint filed by Icebox-Scoops, there can be no recovery against Dana on any Claim premised or relating in any way to the alleged breach of or terms of the Licensing

14

Agreement, to which Dana never signed. Where a litigant has no basis to assert the exception to the no recourse rule, a mere claim of entitlement to the very limited rule exception is not sufficient to support a claim of recovery against a non-signatory corporation. See, for example, <u>Purcell v. Universal Bank, N.A.</u>, 2003 U.S. Dist. LEXIS 7061 (*6) (ED, Pa., 2003) (no allegations of any exercise of dominion and no proof or suggestion of any proof or ability to recover under the limited exception of alter ego domination and control).

Dana never owned the TINKERBELL® mark, never had any right to license it and never had any right to take any action against Finanz' licensee (Ice Box or Gindi) *vis a vis* Licensing Agreement.

The instant action and all of its Claims (except the Sixth Claim perhaps as it does not relate to the Licensing Agreement) must be dismissed as a matter of law.

## CONCLUSION

### THE COMPLAINT AND ACTION MUST BE DISMISSED.

Dated: June 23, 2008

                                              Respectfully yours,

                                              *Lawrence B. Goldberg*
                                              LAWRENCE B. GOLDBERG, ESQ. (LG-5357)
                                              Lawrence B. Goldberg, P.C.
                                              Attorney for Movant
                                              DANA CLASSIC FRAGRANCES, INC.
                                              220 Fifth Avenue
                                              Thirteenth Floor
                                              New York, NY 10001
                                              (212) 252-8300

Service on the following attorneys via *ECF*

David J. Sack, Esq.
Feder, Kaszovitz, Isaacson, Weber,
  Skala, Bass & Rhine, LLP

15

750 Lexington Av.
New York, NY 10022

[attorney for plaintiff]

Jennifer P. Nigro, Esq.
Phillipe Alain Zimmerman, Esq.
Moses & Singer, LLP
405 Lexington Av.
New York, NY 10174

[attorneys for defendant Finanz St. Honore, B.V.]